IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JOHNNY M. DUNN, | : | |
| Petitioner, | : | Case No. 3:03CV133 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| WANZA JACKSON, Warden,<br>Warren Correctional Institution, | : | |
| | : | |
| Respondent. | | |
| | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Petitioner Johnny M. Dunn, an inmate at the Warren Correctional Institution in Lebanon, Ohio, brings this case *pro se* seeking a writ of habeas corpus under 28 U.S.C. §2254. This matter is before the Court upon Respondent's Answer/Motion to Dismiss as Time Barred (Doc. #4), Dunn's Traverse (Doc. #10), and the record as a whole.

## II. PROCEDURAL HISTORY

### A. **Dunn's Trial And Direct Appeals**

On January 17, 1997, a jury in the Montgomery County, Ohio Court of Common Pleas found Dunn guilty on one count of involuntary manslaughter with a firearm specification and one count of intimidation of a crime victim or witness. (Doc. #4, Exhibits 1, 3).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Soon thereafter, on January 31, 1997, Dunn filed a timely motion for new trial. Dunn asserted that the jury-selection process in Montgomery County, Ohio systematically and intentionally excluded persons under age 45 and excluded persons from a racially diverse cross-section of the community in violation of the Sixth and Fourteenth Amendment to the United States Constitution. *Id*. at Exh. 2. Later that year, in November 1997, the trial court overruled Dunn's Motion for a New Trial. *Id*. at Exhs. 4A and 4B.

Meanwhile, on February 6, 1997, the trial court sentenced Dunn to a term of ten years imprisonment on the involuntary manslaughter conviction with an additional three years for the firearm specification and a five year sentence on the intimidation conviction. *Id*. at Exh. 3.

Dunn, through counsel, filed a direct appeal in the Ohio Court of Appeals. On September 29, 2000, the Ohio Court of Appeals overruled Dunn's Assignments of Errors and affirmed the trial court's judgment of conviction. *Id*. at Exh. 10.

Dunn did not file a timely direct appeal in the Ohio Supreme Court. However, approximately seventeen months later, on April 18, 2002, Dunn filed a *pro se* Motion for Delayed Appeal in the Ohio Supreme Court. *Id*. at Exhs. 11, 12. He explained in this Motion that at the close of his direct appeal in the Ohio Court of Appeals, appellate counsel forwarded to him the Court of Appeals' entry. *Id*., Exh. 12 at 3. Dunn further explained that his appellate counsel informed him that he (counsel) "had fulfilled his court appointment apologizing for not being able to obtain a more favorable response from the court." *Id*. Dunn asserted that he "was not informed of his right to appeal ... to the Ohio Supreme Court nor was he informed of the statutory deadline involved to perfect an appeal. Further, [he] had no idea of what other options were available to him." *Id*. Dunn further asserted that he had been diligent in pursuing his

2

appeal to the Ohio Supreme Court.  *Id.*

On May 29, 2002, the Ohio Supreme Court denied Dunn's Motion for Delayed Appeal without supporting explanation.  *Id*. at Exh. 13.

### B.      Dunn's Attempts to Reopen his Direct Appeal

On February 27, 2001, Dunn filed a *pro se* Motion to Appoint Counsel to Reopen Direct Appeal pursuant to Ohio R. App. P. 26(B) and relying in part on *White v. Schotten*, 201 F.3d 743 (6th Cir. 2003).  (Doc. #4 at Exh. 14).  Dunn argued that his appellate counsel provided ineffective assistance on his direct appeal in violation of his constitutional rights.  *Id*. (Memorandum in Support at 1-3).

The Ohio Court of Appeals denied Dunn's Motion for Appointment of Counsel on April 20, 2001, stating as follows:

> Decisions in the United States Court of Appeals for the Sixth Circuit are not [binding] precedent unless and until they are adopted and followed by the Supreme Court of Ohio, which has not adopted *White v. Schotten*....  In our view, that decision misconstrues prior decisions of the Supreme Court of Ohio to find that App. R. 26(B) applications are continuations of a direct appeal, to which the right to counsel attaches.  Therefore, we respectfully decline to follow *White v. Schotten*....

*Id*. at Exh. 16 (brackets in *Dunn*)(citations omitted).[2]

Dunn next filed an Application for Reopening his direct appeal pursuant to Ohio R. App. P. 26(B) on November 18, 2002.  *Id*. at Exh. 17.  Dunn claimed that his appellate counsel provided ineffective assistance during his direct appeal in violation of his rights under the Sixth

---

[2] The Ohio Supreme Court has since rejected *White v. Shotten's* characterization of Ohio Rule App. P. 26(B) as part of a convicted defendant's direct appeal.  *Morgan v. Eads*, 104 Ohio App.3d 142, 147 (2004).  In *Morgan*, the Ohio Supreme Court held, "the [Ohio] App. R. 26(B) process represents a collateral postconviction remedy and is not part of the original appeal."  *Id*. at 147-48.

3

and Fourteenth Amendments. This occurred, according to Dunn, when appellate counsel failed to raise a claim that his trial counsel "denied [Dunn] his right to take the stand and testify on his own behalf...." *Id*. at 2-4.

On December 4, 2002, the Ohio Court of Appeals denied Dunn's Application for Reopening. *Id*. at Exh. 19.

Dunn pursued a timely appeal in the Ohio Supreme Court. *Id*. at Exh. 20, 21. By Entry dated March 19, 2003, the Ohio Supreme Court dismissed the appeal as "not involving any substantial constitutional question." *Id*. at Exh. 22. The Ohio Supreme Court provided no analysis in support of this conclusion. *Id*.

### C. Dunn's Federal Habeas Petition

On April 18, 2003, Dunn filed the present case seeking a writ of habeas corpus under the following grounds:

Ground One:     [Dunn] was denied his rights under the Sixth and Fourteenth Amendments of the United States Constitution in that he was denied the selection of a jury from a representative cross-section of the community, that being an essential component of the Sixth Amendment right to a trial by jury.

Ground Two:     The lower court committed reversible error in failing to take affirmative steps to ensure a representative cross-section of the community in [Dunn's] jury and in overruling [his] motion for a new trial challenging his jury array.

Ground Three:     The court committed reversible error in disallowing the production of evidence that would have been [presumably, "detrimental"] to the State of Ohio and beneficial to [Dunn].

Ground Four:     The lower court committed reversible error in failing to exclude prejudicial hearsay and in failing to give a curative instruction on prejudicial hearsay which was disallowed by the court but heard by the jury nonetheless.

Ground Five:    The lower court committed reversible error in allowing evidence to be heard by the jury that [Dunn] had a Dayton Police Department Number.

Ground Six:    The trial court committed reversible error by depriving [Dunn] due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and comparable provisions of the Ohio Constitution by entering a verdict of guilty as such verdict was against the manifest weight of the evidence.

Ground Seven:    [Dunn] was denied the right to testify under the Sixth Amendment to the United States Constitution when counsel refused to allow [him] to testify despite his repeated request to do so.

(Doc. #1).

### III.   DISCUSSION

#### A.    The Parties' Contentions

Respondent contends that Dunn's present Petition is time barred by the applicable one-year statute of limitations. Respondent argues that the statute of limitations began to run when Dunn's conviction became final at the close of the 45-day period, during which he could have appealed the Ohio Court of Appeals' rejection of his direct appeal. Respondent calculates that this 45-day period ended on November 13, 2000.

Respondent further argues that (1) Dunn's subsequent Motion to Appoint Counsel to Reopen Direct Appeal did not toll the limitations period; (2) although Dunn's Motion for Delayed Appeal under Ohio R. 26(B) did toll the limitations period, more than one year had passed by this time; and (3) Dunn's Application to Reopen his Direct Appeal did not toll the limitations period.

Dunn contends that his appellate counsel did not inform him of his right to appeal the Ohio Court of Appeals' decision on his direct appeal to the Ohio Supreme Court. Because of

5

this failure by appellate counsel, Dunn thought his appeals were complete until he later learned otherwise, apparently from the Ohio Public Defender's Office.  *See* Doc. #10 at 3-4.  Dunn also contends that his conviction did not become final until the Ohio Supreme Court denied his *pro se* Motion for Delayed Appeal on May 29, 2002.

### B. Dunn's Petition is Time Barred

The Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), which became effective on April 24, 1996, requires a state prisoner seeking to bring a federal habeas corpus action to file his or her Petition within one year from the conclusion of his or her state appeal.  28 U.S.C. §2244(d)(1).  This one-year period begins to run from the latest of the following:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution ... is removed;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable...;
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

The AEDPA permits tolling of its one-year statute of limitations as follows:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(2).

6

Dunn's direct appeal in the Ohio Court of Appeals concluded on September 29, 2000 when the Ohio Court of Appeals issued its decision rejecting Dunn's assignments of errors. *See* Doc. #4 at Exh. 10.  Under the Ohio Supreme Court Rules of Practice, Dunn had 45 days to file an appeal in the Ohio Supreme Court.  *See* Ohio S.Ct. R. Pract., Rule II, §2(A); *see also* Doc. #4 at 14.  Dunn thus had until November 13, 2000 to file a Notice of Appeal in the Ohio Supreme Court.  He did not do so.  Consequently, the AEDPA's statute of limitations began to run on November 13, 2000.

One year later, on November 13, 2001, the AEDPA's limitation period expired.  Dunn did not file the present case until April 13, 2003.  Unless some intervening state proceeding tolled the AEDPA's statute of limitations from running, Dunn's present habeas corpus Petition is time barred.

Three state proceedings occurred after November 13, 2000:

1. On February 27, 2001, Dunn filed in the Ohio Court of Appeals a Motion to Appoint Counsel to Reopen his Direct Appeal (Doc. #4, Exh. 14);

2. On April 18, 2002, Dunn filed a *pro se* Motion for Delayed Appeal in the Ohio Supreme Court (Doc. #4, Exhs. 11, 12); and

3. On November 18, 2002, Dunn filed in the Ohio Court of Appeals an Application for Reopening his direct appeal under Ohio R. App. P. 26(B) (Doc. #4, Exh. 17 at 1, 5, 7).

The first state proceeding – Dunn's February 2001 Motion to Appoint Counsel to Reopen Direct Appeal –  did not toll the running of the limitations period because this Motion did not seek post-conviction or collateral relief of the type described in 28 U.S.C. §2244(D)(2).  If granted, Dunn's Motion to Appoint Counsel would have resulted in the appointment of counsel for the purpose of seeking to reopen his direct appeal.  This was not an application for state post-

conviction or collateral relief since it did not seek such relief but merely sought the appointment of counsel as a first step towards seeking such relief. Consequently, this Motion was not "a properly filed application for State post-conviction or other collateral review...," 28 U.S.C. §2244(d)(2), and it did not toll the AEDPA limitations period from running. This Motion, moreover, was not an application for "review with respect to the pertinent judgment of conviction...." 28 U.S.C. §2244(d)(2). Consequently, the AEDPA's statute of limitations continued to run during the pendency of Dunn's Motion to Appoint Counsel to Reopen Direct Appeal.

Dunn contends that his February 2001 Motion for Appointment of Counsel was part of his direct appeal process because he relied on *White v. Schotten*, which held that Ohio R. App. P. 26(B) Motions were part of convicted defendant's direct appeal. Dunn concludes that his Motion constituted part of a critical stage (direct appeal) of the state proceedings, during which he was constitutionally entitled to appointed counsel. (Doc. #10 at 5). This contention does not show how the Motion for Appointment of Counsel tolled the AEDPA's statute of limitations. It instead goes to the merits of a potential claim concerning whether the Ohio Court of Appeals' decision violated his constitutional rights by denying him appointed counsel at a critical stage of the proceedings against him. *See, e.g., Lopez v. Wilson*, 355 F.3d 931, 937-41 (6th Cir. 2004), *vacated pending en banc review*, 366 F.3d 430 (6th Cir. 2004).

In addition, even assuming that Dunn's February 2001 Motion for Appointment of Counsel tolled the limitations period, this does not assist Dunn in overcoming his time problems. Assuming the limitations period was tolled from February 27, 2001 to April 20, 2001, when the Ohio Court of Appeals denied his Motion to Appoint Counsel, Dunn because took no further

action until April 18, 2002 when he filed his *pro se* Motion for Delayed Appeal in the Ohio Supreme Court. The AEDPA's one-year limitations period had long since expired by this time even if the period from February 27, 2001 to April 20, 2001 is not counted.[3]

Dunn's second potential tolling act in the Ohio courts occurred on April 18, 2002 when he filed his *pro se* Motion for Delayed Appeal in the Ohio Supreme Court. This Motion is of the type that would normally toll the AEDPA's limitation period. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001). By this date (April 18, 2002), however, the statue of limitations had run from November 13, 2000 and much more than one year had passed. This is true even assuming that tolling occurred between February 27, 2001 and April 21, 2001.

A state court motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled. *See Hargrove v. Brigano*, 300 F.3d 717, 718 n. 1 (6th Cir. 2002); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *See also Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003). In the instant case, there was no longer any time remaining in the one-year limitations period to toll. Dunn's April 18, 2002 Motion for Delayed Appeal also did not restart the AEDPA's statute of limitations, *See Searcy*, 246 F.3d at 519. Consequently, Dunn's April 18, 2002 Motion for Delayed Appeal does not assist him in avoiding his statute-of-limitations problem.

This is likewise true with regard to Dunn's third state proceeding, his *pro se* Application to Reopen his Direct Appeal. Dunn filed this Application in the Ohio Supreme Court on December 4, 2002. By this date, however, no time remained in the AEDPA's one-year

---

[3] Specifically, the limitations period ran for 106 days from November 13, 2000 to February 27, 2001. Tolling then occurred and continued until April 20, 2001, when the Ohio Court of Appeals denied his Motion. The limitations period then ran for another 259 days until expired in early December 2001.

9

limitations period. This Application thus did not toll the running of the AEDPA's statute of limitations. *See Webster*, 199 F.3d at 1259; *see also Searcy*, 246 F.3d at 519.

Dunn contends that the Ohio Court of Appeals' denial of his Motion to Reopen by rejecting *White v. Schotten* constituted an impediment to his attempt to reopen his direct appeal, which was part of his direct appeal process. This contention lacks merit because it fails to show that a state impediment caused Dunn any delay in directly appealing his conviction to the Ohio Supreme Court or in pursuing a properly filed action for state postconviction or collateral relief.

Dunn also asserts that his conviction did not become final until May 29, 2002 when the Ohio Supreme Court dismissed his Motion for Delayed Appeal. This is incorrect. Dunn's conviction became final, as discussed above, on November 13, 2000 when the 45-day period expired during which Dunn could have filed a timely direct appeal in the Ohio Court of Appeals. Dunn's intervening acts in the state courts did not toll the limitations period until. Even if tolling occurred by his first post-November 13, 2000 act, the statute of limitations still expired and was neither revived nor restarted by his remaining acts – including his Motion for Delayed Appeal in the Ohio Supreme Court.

Accordingly, unless equitable tolling applies, the AEDPA's one-year statute of limitation bars Dunn's present federal habeas corpus Petition.

### C. Equitable Tolling Does Not Apply

It is unclear whether Dunn seeks an application of equitable tolling to avoid the time problems he faces. Assuming he does, equitable tolling fails to assist him.

> 'Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'... The United States Supreme Court has explained that '[w]e have allowed

>equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.' However, the Court has 'generally been much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights.' 'Absent compelling equitable considerations, a court should not extend limitations by even a single day.'

*Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003)(citations omitted). Dunn asserts that his appellate counsel failed to inform him in a timely manner about the Ohio Court of Appeals' decision on his direct appeal. However, the Sixth Circuit has held that generally, an attorney error is not a valid basis for application of equitable tolling. *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003). Moreover, Dunn fails to explain why he delayed until April 18, 2002 – well over one year after November 2000 when the limitations period began to run – to file his a *pro se* Motion for Delayed Appeal in the Ohio Supreme Court. Finally, Dunn does not present any state action or compelling equitable circumstance sufficient to support an application of equitable tolling. *See* Doc. #10.

Accordingly, equitable tolling does not assist Dunn in overcoming his statute-of-limitations problem.

### D. Certificate of Appealability

Before a petitioner may take an appeal from a denial of a Petition for a Writ of Habeas Corpus, he or she must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). To obtain a certificate of appealability when a petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the Petition should have been resolved in a different manner or that the issues presented were

adequate to deserve encouragement to proceed further.  *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 (1983)).

If the District Court dismisses a habeas Petition on procedural grounds without reaching constitutional questions, the petitioner must show that jurists of reason would find it debatable whether the District Court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484.  The procedural issue should be decided first so as to avoid unnecessary constitutional rulings.  *Slack*, 529 U.S. at 485 (citing *Ashwander v. TVA*, 297 U.S. 288, 347 (1936)(Brandeis, J., concurring)).

As discussed above, Dunn's Petition is time barred.  Nothing in Dunn's Traverse reveals the existence of a circumstance sufficient either to justify the equitable tolling of the AEDPA's statute of limitations or to excuse the application of the AEDPA's statute of limitations.  Dunn's contentions in his traverse are likewise insufficient to show that reasonable jurists would disagree about the conclusion that his Petition is barred by the AEDPA's statute of limitations.

Accordingly, a certificate of appealability should not issue in this case.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Respondent's Motion to Dismiss Habeas Petition as Time Barred (Doc. #4) be GRANTED;

2. Dunn's Petition for a Writ of Habeas Corpus be DENIED and DISMISSED;

3. A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

4. The case be terminated on the docket of this Court.


May 4, 2005                                               s/ Sharon L. Ovington
                                                         Sharon L. Ovington
                                                     United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).